**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Todd M. Friedman, Esq. (SBN: 216752)
tfriedman@attorneysforconsumers.com
Nicholas J. Bontrager, Esq. (SBN: 252114)
nbontrager@attorneysforconsumers.com
369 S. Doheny Dr., #415
Beverly Hills, CA 90211
Telephone: (877) 206-4741
Facsimile: (866) 633-0228

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

*Attorneys for Plaintiff*,
James Gusman

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JAMES GUSMAN, Individually and on Behalf of All Others Similarly Situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**COMCAST CORPORATION**<br><br>**Defendant.** | Case No.: 13-cv-1049-GPC (DHB)<br><br><br>**CLASS ACTION**<br><br>**JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE** |

**PLAINTIFF'S POSITION**

## I.  Discovery is Proper Prior to a Motion for Class Certification

First off, "[D]iscovery must be broad enough to give plaintiffs a realistic opportunity to meet (the certification) requirements." *Flores v. Bank of Am.*, 2012 U.S. Dist. LEXIS 182393, *3 (S.D. Cal. Dec. 27, 2012) (internal quotations omitted).  In order to have a fair opportunity to demonstrate the prerequisites of a motion for class certification pursuant to F.R.C.P. 23(a) are satisfied, and to show that a class action would be manageable, Plaintiff seeks the outbound dial list for Defendant's (or its agent's) calls to consumers using an automated dialer. Plaintiff also seeks at least the blank customer contract/forms used by Defendant's during the class period to purportedly obtain prior express consent to call consumers on their cell phone via automated dialer using an artificial or prerecorded voice.[1]

### A.    Defendant's Privacy Objection

Defendant did <u>not</u> raise the objection that disclosure is prohibited by 47 U.S.C. §551 ("Cable Act"), in response to Plaintiff's written discovery requests at issue here,[2] thus waiving this objection.[3] Further, Defendant's recent objection under the Cable Act is based upon a misunderstanding of the statute's prohibition on disclosing "personally identifiable information" ("PII").

---

[1] Notably, there is a protective order already on file with the Court. Dkt. No. 21.
[2] Plaintiff's Exhibit A.
[3] "It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) (citing *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981)).

In *Dish Network LLC v. Fun Dish, Inc.*, 2012 U.S. Dist. LEXIS 134677, *19 (N.D. Ohio Sept. 20, 2012), the court found that SHVERA, a statute with similar privacy based limitations (but as to satellite providers), applies to protect from disclosure confidential personally identifiable information. *Fun Dish, Inc.*, *supra*, at *19. Further, it is fairly patent that a telephone number alone is not confidential information, unlike an account number or social security number. Defendant cannot show that mere provision of a telephone number, without more, to Plaintiff's technology consultant under protective order, would amount to disclosure of information that personally identifies the individual who owns or regularly uses the telephone number, especially when Plaintiff's technology consultant may be ordered by the Court not to call those numbers.

A similar statute, FERPA, and its regulations define PII as including "personal identifier[s]" such as "the student's social security number, student number, or biometric record," as well as "indirect identifiers, such as the student's date of birth." *Doe v. Ohio*, 2013 U.S. Dist. LEXIS 69022, 18 (S.D. Ohio May 15, 2013) (quoting 34 C.F.R. § 99.3). Further, *Warner v. Am. Cablevision of Kansas City*, 699 F. Supp. 851, does not state that disclosure of a telephone number of an individual, alone, constitutes personally identifying information. *Warner v. Am. Cablevision of Kansas City*, 699 F. Supp. 851, 855 (D. Kan. 1998).

Next, the very statute cited by Defendant allows for the disclosure of personally identifiable information where disclosure is "made pursuant to a court

order authorizing such disclosure." 47 U.S.C. §551(c)(2)(B). So if the Court orders Defendant to produce the outbound dial list under protective order, Defendant could send notice to it account holders whose telephone numbers appear on the outbound dial list rather than having to obtain written consent from each subscriber. As to all individuals whose telephone numbers appear on Defendant's outbound dial list, who are not Defendant's subscribers (such as Plaintiff), Defendant would not have to obtain written consent or even provide notice of such court order, as the relevant provision under this statute does not apply to non-subscribers.  47 U.S.C. §551(b).

Further, Defendant would have to produce such telephone numbers to the claims administrator in order to effectuate notice to the class members and permit class members to obtain any settlement payment, if a class were certified. Indeed, "[t]he disclosure of names, addresses, social security numbers, and <u>telephone numbers</u> is a common practice in the class action context." *Khalilpour v. CELLCO P'ship*, 2010 WL 1267749, at *2 (N.D. Cal. 2010) (emphasis added).

Alternatively, Defendant should be ordered to produce only the first seven digits of each telephone number on its outbound dial list, which partial telephone numbers could not possibly be considered "personally identifiable information" because there would be no way to identify the owner of the telephone number, and there are numerous possible permutations of telephone numbers where the last three digits are withheld. In such instance, Plaintiff's technology consultant would

set aside all the repeat telephone numbers (there may be repeat telephone numbers because the last three digits would be undisclosed), which would permit Plaintiffs' technology consultant to identify all the unique cellular telephone numbers by scrubbing the list to exclude landline telephone numbers), minus the repeat telephone numbers. Plaintiff's technology consultant only needs the first seven digits of the telephone number to identify whether it is assigned to a cellular telephone service. Then, post-certification, disclosure of the entire ten digits of the telephone numbers would be requested and used for class notice purposes.

A second alternative would be for Defendant's technology consultant to scrub the outbound dial list for cellular telephone numbers only and then inform Plaintiff's counsel of the total number of unique cell phones called during the class period and call frequency. This would obviate the need for actual production of the outbound dial list for pre-certification purposes.

Therefore, 47 U.S.C. §551 is not a bar to Plaintiff's request for the outbound dial list and documentary evidence of prior express consent, especially since this objection has been waived by Comcast.

## B.     Outbound Dial List

Plaintiff's RPD, No. 7 (Set One)[4] reads:

> Produce any and all DOCUMENTS relating to or regarding, and including, an and all reports for each outbound dial list to persons that YOU called on behalf of

---

[4] Plaintiff served similar requests for the outbound dial list. Pl.'s Exhibit A [Responses to RPD. Nos. 7-10 (Set One)].

YOURSELF, and/or any third party, including those outbound dial list, in electronically searchable format (CSV []or comma delimited format), generated by any autodialer campaign in which YOU or YOUR agents engaged since four years prior [to] the filing of this action to the date of responding to these document requests.

The outbound dial list during the class period is relevant to the numerosity prerequisite[5] because it will allow Plaintiff to explain to the Court approximately how many cellular telephone numbers were called during the class period, which information can be used to reasonably[6] determine whether there are enough class members that resolving the claims outside the class action mechanism of recovery would be impracticable. As recently as June 17, 2013, this Court found that the outbound dial list in a similar TCPA case was relevant to the numerosity prerequisite. *Stemple v. QC Holdings, Inc.*, 2013 U.S. Dist. LEXIS 99582, *6 (S.D. Cal. June 17, 2013) (finding such list may assist with "substantiating class allegations").

In *Knutson*, this Court found that "it is likely the outbound dial lists and reports will illuminate issues such as … whether common questions of law or fact exist, thus making the class action device appropriate in this case." *Knutson v. Schwan's Home Serv.*, 2013 U.S. Dist. LEXIS 41995, *6 (S.D. Cal. Mar. 25, 2013), rev'd in part in *Knutson v. Schwan's Home Serv.*, 2013 U.S. Dist. LEXIS 98735 (S.D. Cal. July 15, 2013). On remand this Court held that "'[t]he common question

---

[5] Under Rule 23(a), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

[6] *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 644 (N.D. Ill. 2002) ("The court is able to make common-sense assumptions in determining numerosity.").

is thus, 'were we all called *on our cellular telephones*, by an autodialer or artificial or prerecorded voice, on behalf of Schwan's, without having given express consent?' … Thus, whether the putative class members were called on their cell phones is relevant to the question of commonality.'" *Knutson*, 2013 U.S. Dist. LEXIS 103094 at *4. Plaintiff's technology consultant will need to scrub the outbound dial list for calls to cellular telephones only, as only calls to cell phones are actionable under 47 U.S.C. § 227(b)(1)(A)(iii).

Moreover, the court in *Webb* found the "[d]efendants fail[ed] to explain why the outbound dial list is irrelevant to establishing whether the calls were made using an ATDS. After all, the magistrate judge specified that the outbound dial list must show 'all telephone numbers called by HRRG '*utilizing an autodialer*[.]' … Accordingly, if HRRG provides the list as described in the order, the document would likely bear on the commonality inquiry." *Webb*, 2014 U.S. Dist. LEXIS 11091 at *7.

Under F.R.C.P. 23(b)(3), a class action must be reasonably manageable. *Gragg v. Orange Cab Co.*, 2014 U.S. Dist. LEXIS 26313, *14 (W.D. Wash. Feb. 27, 2014). For this reason, this Court has explained that an outbound dial list "may be helpful for Plaintiffs to be able to articulate in their motion for class certification how large, or small, the proposed class is expected to be. This information may also be relevant to issues such as manageability." *Knutson*, 2013 U.S. Dist. LEXIS 41995 at *7. Thus, Comcast should be ordered to produce its outbound dial list

during the class period at this time (prior to class certification), in standard electronically searchable format, within fourteen days.

## C.    Documentary Evidence of Prior Express Consent

Plaintiff's RPD, No. 12 (Set One) reads:

> Produce the DOCUMENTS that YOU used to determine whether the cellular telephone numbers to be called by YOU had provided their "prior express consent", as that term is used in 47 U.S.C. Section 227(b)[1](A), prior to making any attempt to call those numbers, including but not limited to any electronic notations in the outbound dial list that the called party provided "prior express consent," and including all DOCUMENTS that YOU may reply on at trial or other hearing in this case to establish "prior express consent" was provided to YOU since four years prior to the filing of this action to the date of responding to these document requests.

As explained by the Ninth Circuit Court of Appeals, "'express consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof." *Grant v. Capital Mgmt. Servs., L.P.*, 449 Fed. Appx. 598, 600 (9th Cir. Cal. Sept. 2, 2011); *Mashiri v. Ocwen Loan Servicing, LLC*, 2013 U.S. Dist. LEXIS 154534, *14 (S.D. Cal. Oct. 28, 2013) ("arguing that the Plaintiff provided prior express consent is an affirmative defense…"). "[E]xpress consent is '[c]onsent that is clearly and unmistakably stated.'" *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) (quoting Black's Law Dictionary 323 (8th ed. 2004)).

Several district courts have ordered production of some or all of a TCPA defendant's documentary evidence of the affirmative defense of "prior express

consent" prior to a motion for class certification because such evidence is relevant to requirements under F.R.C.P. 23 to show that a class action is manageable and/or common issues predominate. *Knutson*, 2013 U.S. Dist. LEXIS 41995 at *14 (ordering defendant to conduct a sampling of documentary evidence of prior express consent for a given period, as well as all evidence of prior express consent for a given period where the evidence was electronically stored); *Stemple*, 2013 U.S. Dist. LEXIS 99582 at *22 (ordering production of "any and all communications, written or otherwise, on which Defendant would rely on at trial or other hearing, to show prior express consent was given for all cellular numbers that were actually dialed within the statutory term."); *Donnelly v. NCO Fin. Sys.*, 263 F.R.D. 500, 504 (N.D. Ill. 2009) ("NCO must produce the requested class-wide documents and information relating to its prior express consent defense.").

At the very least, Plaintiff's narrowed request for the blank customer contracts and other blank forms used by Defendant to purportedly obtain prior express consent is relevant to Plaintiff's eventual motion for class certification. [7] These blank contracts/forms will assist Plaintiff in demonstrating whether the language on the forms are sufficient to obtain prior express consent for Defendant to make automated and or prerecorded calls to the putative class members. Further, without a reliable time and cost estimate, is pure speculation from Defendant as to whether such

---

[7] During meet and confer efforts, Plaintiff suggested requesting only the blank customer contracts/forms, which proposal was rebuffed by Defendant.

production would be unduly burdensome.

Significantly, the purpose of discovery is to make trial "<u>less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent possible</u>." *United States v. Procter & Gamble*, 356 U.S. 677, 683 (1958) (emphasis added).  It would be unfair for Defendant to now withhold even the blank customer contracts/forms used by Defendant during the class period, then surprise Plaintiff (in opposition to a motion for class certification )with such evidence in arguing that it defeats commonality/predominance, especially considering Defendant must prove prior express consent.  This is why the defendant in *Webb* was ordered to produce "any documents showing 'prior express consent' that HRRG will use in opposing class certification" (*Webb*, 2014 U.S. Dist. LEXIS 11091 at *11), since production of evidence of prior express consent for the first time in opposition to a motion for class certification would not permit a TCPA plaintiff sufficient time to conduct rebuttal discovery in time to file a reply brief.

Thus, Comcast's documentary evidence of prior express consent, if it exists, should be produced at this time to avoid prejudice to Plaintiff. Therefore, Plaintiff requests that Defendant be ordered to either produce its documentary evidence of prior express consent within 30 days or be barred from replying upon such purported documentary evidence of prior express consent in this case.

### D.    Plaintiff's Fee Agreement

Defendant's request for the fee agreement between Plaintiff and Plaintiff's

attorneys should be denied.  Defendant believes the fee agreement may be relevant to the "adequacy" prerequisite of a motion for class certification but fails to recognize that any award given to Plaintiff as a class representative would already be publically disclosed if a class action was certified (and the case were to settle or be won on a class basis), and that any individual settlement would simply not implicate the requirement of F.R.C.P. 23(a)(4). Defendant cannot, and has not shown that the fee agreement must be disclosed. Pure curiosity by Defendant is akin to an improper fishing expedition rejected by the courts. *Carter v. Martel*, 2011 U.S. Dist. LEXIS 80572, *8 (S.D. Cal. July 25, 2011).

## III.   CONCLUSION

Plaintiff respectfully requests the Court to order Defendant to produce its non-duplicated outbound dial list during the class period and documentary evidence of prior express consent, and deny Defendant's request for production of Plaintiff's fee agreement.

Respectfully submitted,

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**

Date: March 5, 2014                By:/s/ Nicholas J. Bontrager
                                   Nicholas J. Bontrager
                                   *Attorney for Plaintiff*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COMCAST'S POSITION**

## I.   INTRODUCTION

Plaintiff's motion to compel further responses to two requests for production of documents results directly from his failure to compromise meaningfully during the meet and confer process and his insistence upon seeking irrelevant materials.

Plaintiff, who premises his claims on receiving collection calls from Comcast between March 30 and June 2, 2013, insists upon receiving outbound dial lists showing almost all calls made by Comcast (with 22 million subscribers) and its agents since 2009.  Plaintiff cannot explain why he wants company-wide data going back four years on calls made for myriad reasons and using different equipment, especially when Plaintiff was only called because he was assigned the recycled phone number of a Comcast subscriber.  Indeed, the Court ruled recently in another TCPA case an outbound dial list was <u>not</u> appropriate for production at the class certification stage for the same reasons that apply here.

Plaintiff wants "blank contracts and forms" from Comcast so he can determine whether language in such agreements gives Comcast consent to call subscribers.  Plaintiff, however, has never been a Comcast subscriber and lacks standing to challenge the efficacy of those agreements.   Put simply, Plaintiff's requests are overbroad and not relevant to Plaintiff's attempt to certify a class.

Plaintiff also has not produced relevant documents in response to Comcast's discovery requests.  Plaintiff has not produced his cell phone records during March

30 and June 2, 2013, and he has not produced agreements with his counsel.  Those documents go directly to Plaintiff's claims that he received calls from Comcast on his cell phone and to Plaintiff's adequacy to serve as class representative.

For these reasons, as explained more fully below, the Court should deny Plaintiff's motion to compel further responses to two requests, and should grant Comcast's motion seeking Plaintiff's phone records and agreement with counsel.

## II.   STATEMENT OF FACTS

Comcast calls subscribers who provide their phone numbers to receive calls to discuss their accounts.  Hawk Decl., ¶ 2.  Here, Comcast, using dialing equipment and procedures unique to its West Division, called Plaintiff's purported cell phone number between March 30 and June 2, 2013, because Comcast's records showed the number belonged to a subscriber with a past due balance.  *Id.*, ¶¶ 2, 6.  Plaintiff received non-telemarketing calls from Comcast only because he was assigned the recycled phone number of a Comcast subscriber.  *Id.*, ¶ 2.

Plaintiff filed a putative class action complaint against Comcast on May 2, 2013.  Compl., Dkt. 1, ¶¶ 13-15, 27 (filed May 2, 2013).  The Complaint alleges Comcast, using (800) 266-2278, called Plaintiff's cell phone to discuss Plaintiff's services with Comcast.  *Id.*, ¶¶ 13-14.  Plaintiff alleges he was never a Comcast subscriber and did not consent to be called.  *Id.*, ¶¶ 15, 27.

The Complaint seeks to certify a class of "all persons within the United States who received any unsolicited marketing and artificial or prerecorded voice

messages from [Comcast] without prior express consent." Compl., ¶ 27. Importantly, Plaintiff knew on August 6, 2013, Comcast called him to collect amounts due on a subscriber account, but he has not sought to amend his proposed class definition beyond individuals who received <u>marketing</u> calls. Hawk Decl., ¶ 3.

Plaintiff served his only set of discovery requests on Comcast on December 3, 2013. Comcast produced to Plaintiff information and documents showing:

- A Comcast subscriber provided the phone number that now belongs to Plaintiff at the time that subscriber set up his account with Comcast;
- Records of calls to Plaintiff's phone number;
- Comcast uses dialer equipment unique to the West Division to make collections calls from (800) COMCAST only to subscribers it believes consented to be called to discuss their Comcast accounts; and
- How Comcast obtains subscriber phone numbers to call about those subscriber accounts and how Comcast calls those numbers to collect past due balances.

*Id.*, ¶¶ 6, 9.[8] Comcast produced the above documents and information, but declined to produce "outbound dial lists" and "prior express consent" documents more generally. *Id.*, ¶ 15-18. The materials Plaintiff seeks are overbroad, not relevant to allegations in the Complaint and protected from disclosure by 47 U.S.C. § 551. *Id.*

Plaintiff refuses to compromise meaningfully on his requests and, likewise, refuses to produce to Comcast phone records and fee agreements with his counsel in response to Comcast's discovery requests. Hawk Decl., ¶ 20.

---

[8] As discussed in Comcast's opposition to Plaintiff's *ex parte* application to amend the Scheduling Order (Dkt. 25), Plaintiff's first set of discovery served on Comcast consisted largely of inapplicable discovery templates Plaintiff's counsel uses in other factually distinct TCPA cases. Hawk Decl., ¶ 17.

# III.   **ARGUMENT**

## A.   **Plaintiff's RFP No. 7 Is Overbroad**

Plaintiff seeks to compel a further response to RFP no. 7, which asks Comcast to produce "outbound dial list[s] to persons" called by Comcast or an agent as part of an autodialer campaign.  Hawk Decl., ¶¶ 7, 9, Ex. B.  Comcast produced a record of calls to Plaintiff's cell phone number, but also objected to the request as overbroad and because Plaintiff lacks standing to request materials.  *Id.*

The breadth of RFP no. 7 is staggering.  RFP no. 7 asks for records of every call Comcast (with 22 million subscribers) has made since 2009 using equipment considered an "autodialer," which Plaintiff seeks to construe broadly.  RFP no. 7 also ignores crucial distinctions between different types of calls under the TCPA, which bear on who, if anyone, may be similarly situated to Plaintiff and what types of evidence may be relevant at the class certification stage.

The TCPA imposes different legal standards for establishing "prior express consent," a complete defense to a TCPA claim, for collections calls in contrast to marketing calls.  *In re the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 564 (2008).  A party gives consent to receive calls regarding a debt by simply releasing his or her cell phone number in connection with the transaction that results in owing the debt.  *Id.* Establishing consent to make telemarketing calls is more onerous; it requires expressly notifying the call recipient s/he agrees to receive calls. *In re Jiffy Lube*

*Int'l., Inc. Text Spam Litig.*, 847 F. Supp. 2d 1253, 1258 n.7 (S.D. Cal. 2012).

RFP no. 7 does not account for this distinction.  It seeks records of calls dissimilar from collection calls Plaintiff received and not relevant to Plaintiff's attempt to certify a class. *Insolia v. Philip Morris Inc.*, 186 F.R.D. 535, 544 (W.D. Wis. 1998) (plaintiff's claim must share "essential characteristics" of class claims). Similarly, RFP no. 7 is not limited to calls made from any particular type of dialing equipment.  Comcast called using only one dialer dedicated to the West Division. Plaintiff must show the dialer used to call him has certain capabilities constituting an "autodialer" under the TCPA.  Plaintiff does not, however, have standing to assert claims based on other calls using other equipment, which may have different capabilities than the dialer used to call Plaintiff.  *Id.*

## B.   Plaintiff's Offer to Narrow RFP No. 7 Is Insufficient

Plaintiff offered to narrow RFP no. 7 to ask only for lists of phone numbers to which Comcast or an agent made "debt collection/past-due account calls." Hawk Decl., ¶ 20.  There are several problems with Plaintiff's proposal.

First, Plaintiff's Complaint prevents him from seeking "debt collection/past-due account calls."  Plaintiff's proposed class definition and common questions are limited to persons, if any, who received "marketing" calls.  Compl., ¶¶ 27, 33. Plaintiff's Complaint does not reference collections calls, Plaintiff has not sought to amend his Complaint, and he cannot conduct class discovery on this issue.

Second, even if the Court permits Plaintiff's narrowed request, the request is

overbroad.   It is not limited to calls by Comcast's West Division and dialing equipment used to call Plaintiff's phone.

Third, RFP no. 7, <u>as written and as narrowed</u>, does not seek documents going to numerosity, commonality or manageability.   Comcast called Plaintiff and individuals similarly situated, if any, because they obtained recycled phone numbers previously belonging to Comcast subscribers.   The relevant inquiry is how to identify who is "the subscriber[] of the cellphone[] at the time [the] cellphone[] [was] called."  *Jamison v. First Credit Srvcs., Inc.* No. 12-cv-4415, Mem. and Op. Order, Dkt. 120, at 17 (N.D. Ill. July 29, 2013).

Phone numbers will not enable Plaintiff to identify who owns and/or uses phone numbers at the time Comcast called them.   Plaintiff fails to explain how he can use a list of numbers for that purpose.  *Id.*   It is not enough in this case to show merely how many cell phones Comcast called.

The Court's order regarding the production of an outbound dialer list in *Knutson v. Schwan's Home Srvcs., Inc.*, 2013 U.S. Dist. LEXIS 98735 (S.D. Cal. July 15, 2013), controls to the extent inconsistent with Plaintiff's cited authorities. This Court held an all-encompassing outbound dial list with "3.9 million entries [over four years] was irrelevant, unreasonably cumulative, and inconvenient at this stage of discovery."   *Id.* at *22.   An outbound dial list would <u>not</u> establish commonality, among other elements; while "likely merit-based," an outbound dial

list "does not likely overlap with questions pertaining to class certification." *Id.*[9]

## C.    Plaintiff's RFP No. 12 Is Overbroad and Vague

Plaintiff seeks to compel a further response to RFP no. 12, asking Comcast to produce consent documents. Hawk Decl., ¶¶ 6-7, Ex. B. Comcast produced its subscriber agreement and privacy policy, but also objected to the request as overbroad and because Plaintiff lacks standing to request materials. *Id.*

Plaintiff's own motion demonstrates infirmities with this request. Plaintiff asserts "blank contracts/forms will assist Plaintiff in demonstrating whether the language on the forms are sufficient to obtain prior express consent for Defendant to" make autodialed calls to individuals. Yet, Plaintiff was never a subscriber and, thus, never entered into a subscriber agreement. Plaintiff lacks standing to challenge the efficacy of language contained in the subscriber agreement. *Watts v. Duane Arnold Energy Ctr.*, 2000 WL 34031503, at *3 (N.D. Iowa May 16, 2000).

It is also not clear what other types of documents RFP no. 12 seeks. Consent is obtained in different ways depending on the types of calls being made. A called party can consent to receive collection calls simply by providing his or her phone number to Comcast, in which case evidence of consent may be simply Comcast has his or her the phone number in its records. Under the circumstances, what would constitute consent documents? Plaintiff refuses to specify and Plaintiff's citation to

[9] Judge Curiel noted the *Stemple* case, cited by Plaintiff, "is unpersuasive." *Id.* at *18 n.2. Further, Plaintiff's argument that an outbound dial list will go to establishing commonality is incorrect. Plaintiff's proposed class definition and common questions all involve "marketing" calls Plaintiff never received.

*Webb v. Healthcare Revenue Recovery Grp., LLC*, is unavailing.  Comcast cannot know what documents it "will use in opposing class certification" because Plaintiff refuses to sufficiently narrow his requests.

Plaintiff also seeks to place the burden on Comcast to prove lack of consent from putative class members, but that is incorrect and based on outdated authorities.  Recent cases from the Southern and the Northern Districts of California apply *Meyer v. Portfolio Recovery Assoc., LLC*, 707 F.3d 1036 (9th Cir. 2012), to hold plaintiff has the "burden to show a lack of [] consent" at the class certification stage.  *Smith v. Microsoft Corp.*, No. 11-cv-1958-JLS(BGS), Order, Dkt. 85, at 10, 13 (S.D. Cal. Jan. 28, 2014); *Fields v. Mobile Messengers Am., Inc.*, 2013 WL 6073426, at *3-4 (N.D. Cal. Nov. 18, 2013).

### D.   Plaintiff's RFP Nos. 7 and 12 Implicate Privacy Concerns

RFP nos. 7 and 12 seek a list of phone numbers of Comcast subscribers and other subscriber data that may bear on consent.  The data Plaintiff seeks, depending on the scope of his requests, may contain names, addresses, account numbers and subscriber phone numbers.  The data constitutes personally identifiable information ("PII") if used to identify a subscriber. *Warner v. Am. Cablevision of Kansas City*, 699 F. Supp. 851, 855 (D. Kan. 1998).  Comcast objected to producing "documents containing [PII] concerning any subscriber that cannot be disclosed without the prior written or electronic consent of the subscriber." Hawk Decl., ¶ 7, Ex. B.

As applied here, a list of phone numbers or other account information could enable someone to identify Comcast subscribers.   Residential landlines, for example, can potentially be checked against public sources to determine who owns and/or uses the numbers, thereby identifying the subscriber.   Comcast is prohibited from disclosing materials outside of exceptions in 47 U.S.C. § 551(c).

**E.**   **Comcast's Requests for Phone Records Is Proper**

Comcast RFP no. 3 asks Plaintiff to produce cell phone "invoices that refer to a call YOU purportedly received from COMCAST in violation of the TCPA." Hawk Decl., ¶¶ 8-9, Ex. C.  Plaintiff produced a one-page cell phone bill for service during October 2013 and screenshots of a caller ID screen, and responded more "phone records are available by subpoena to AT&T." *Id.*

Plaintiff has not provided any further response, contending he was unable to obtain additional call records.   Hawk Decl., ¶ 22.   This is insufficient.   A "subscriber/user of [a] cell phone service" has the legal right to obtain records from service providers and must do so in response to relevant discovery requests. *Mintz v. Mark Bartelstein & Assoc., Inc.* 885 F. Supp. 2d 987, 994 (C.D. Cal. 2012).

Here, Plaintiff's cell phone records will show when he obtained his number and when, as the user of the phone number, he received calls from Comcast. Plaintiff must obtain these records or, if he cannot, must supplement his response to state he produced all documents in his possession, custody or control.

///

**F.**   **Comcast's Requests for Retainer and Fee Agreements Are Proper**

Comcast RFP nos. 17 and 18 ask Plaintiff to produce his "engagement letter or retention agreement" with his counsel in this case and in any other putative class action.   Hawk Decl., ¶ 8, Ex. C.   Plaintiff objected that these documents are irrelevant and protected by the attorney-client privilege.   *Id.*

Plaintiff's retention and fee agreements are not privileged, and Plaintiff fails to show otherwise.   *Stanley v. Bayer Healthcare, LLC*, 2011 WL 5569761, at *3-4 (S.D. Cal. Nov. 16, 2011).   Moreover, in putative class actions, retainer and fee agreements are relevant to "the ability of named plaintiffs to protect the interest of potential class members and hence are a proper subject for discovery."   *Epstein v. Am. Reserve Corp.*, 1985 WL 2598, at *3 (N.D. Ill. Sept. 18, 1985); *Jamison v. First Credit Srvcs., Inc.*, No. 12-cv-4415, Notif., Dkt. 55 (N.D. Ill. Nov. 30, 2012) (compelling plaintiff to produce retainer and fee agreement in TCPA case).

The terms of Plaintiff's agreement with counsel, in this and his other TCPA actions, are relevant to the adequacy of Plaintiff to serve as a class representative. *Rolex Emps. Ret. Trust v. Mentor Graphics Corp.*, 136 F.R.D. 658, 665-66 (D. Or. 1991).   Comcast is not, as Plaintiff believes, required to wait until after a class is certified to see Plaintiff's agreements with his counsel.   The agreements may bear on class certification and they should be produced now.

## IV.   CONCLUSION

For the foregoing reasons, Comcast respectfully requests the Court deny

Plaintiff's requests to compel and grant Comcast's requests.

Dated: March 05, 2014

By: /s/ J. Jonathan Hawk
Attorney for Defendant

I, Nicholas J. Bontrager, attest that concurrence in the content and filing of this document has been obtained from the other signatory.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: March 05, 2014

By: /s/ Nicholas J. Bontrager
Nicholas J. Bontrager
Attorney for Plaintiff

## Certificate of Compliance

Plaintiff and Defendant, by and through their respective counsel of record, hereby certify that they have met and conferred in person, pursuant to L.R. 26.1.a. prior to the filing of the instant Joint Motion for Determination of Discovery Dispute.

Dated: March 05, 2014

By: /s/ Nicholas J. Bontrager
Nicholas J. Bontrager
Attorney for Plaintiff

Dated: March 05, 2014

By: /s/ J. Jonathan Hawk
J. Jonathan Hawk
Attorney for Defendant

## Certificate of Service

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Law Offices of Todd M. Friedman, 369 S. Doheny Dr., #415; Beverly Hills, CA 90211. On March 05, 2014, I served the within document(s):: 1) **JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE**; 2) **DECLARATION OF J. JONATHAN HAWK IN SUPPORT OF JOINT MOTION**; 3) **DECLARATION OF NICHOLAS J. BONTRAGER IN SUPPORT OF JOINT MOTION; AND 4) PROPOSED ORDER REGARDING JOINT MOTION**

☒ CM/ECF - by transmitting electronically the document(s) listed above to the electronic case filing system on this date before 11:59 p.m. The Court's CM/ECF system sends an e-mail notification of the filing to the parties and counsel of record who are registered with the Court's CM/ECF system.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on March 05, 2014, at Beverly Hills, California.

By: /s/ Nicholas J. Bontrager
Nicholas J. Bontrager