UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES GUSMAN, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>COMCAST CORPORATION,<br><br>　　　　　　　　　　　　Defendant. | Civil No.   13-cv-1049-GPC (DHB)<br><br>**ORDER RESOLVING JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE**<br><br>**[ECF No. 29]** |

On March 5, 2014, Plaintiff James Gusman ("Plaintiff") and Defendant Comcast Corporation ("Comcast" or "Defendant") filed a Joint Motion for Determination of Discovery Dispute. (ECF No. 29.)  The Court held a telephonic Discovery Conference on March 14, 2014 to discuss issues raised in the joint motion. (ECF No. 33.) Following the Discovery Conference, the parties submitted a Joint Status Report.  (ECF No. 37.) Having considered the arguments of the parties and the applicable law, and for the reasons set forth herein, the Court **DENIES** Plaintiff's motion to compel Comcast to produce its outbound dial list and documentary evidence of prior express consent. Additionally, the Court **GRANTS IN PART** Comcast's motion to compel production of Plaintiff's retainer and fee agreements.

## I. BACKGROUND

Plaintiff commenced this putative class action on May 2, 2013 by filing a complaint alleging that Comcast violated the Telephone Consumer Protection Act

("TCPA"), 47 U.S.C. § 227 *et seq.* (ECF No. 1.) Specifically, Plaintiff alleges that "[b]eginning in February 2013, Defendant began contacting Plaintiff, sometimes as many as ten times in a single day, with an automatic telephone dialing system ('ATDS') as defined by 47 U.S.C. § 227(a)(1) using an 'artificial or prerecorded voice' as prohibited by 47 U.S.C. [§] 227(b)(1)(A) in order to discuss Defendant's prescription services with Plaintiff." (*Id.* at 4:22-26.) Plaintiff further alleges he informed a representative on each occasion "that Plaintiff was not a current subscriber to Defendant's servicers nor had Plaintiff ever been a subscriber." (*Id.* at 5:4-6.) Plaintiff did not provide his cellular telephone number, which he obtained on or about February 1, 2013, to Comcast at any time. (*Id.* at 5:7-11.) Plaintiff further alleges Comcast's use of an ATDS to contact Plaintiff was not done for emergency purposes, the calls constitute solicitations under the TCPA, and "Plaintiff did not provide prior express consent to receive calls or messages on Plaintiff's cellular telephones." (*Id.* at 5:21-26.)

According to the operative Complaint, Plaintiff seeks to certify the following class: "[A]ll persons within the United States who received any unsolicited marketing and artificial or prerecorded voice messages from Defendant without prior express consent which message by Defendant or its agents was not made for emergency purposes, within the four years prior to the filing of this action." (*Id.* at 6:4-8.)

## II. DISCUSSION

### A. Legal Standards

The threshold requirement for discoverability under the Federal Rules of Civil Procedure is whether the information sought is "relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). In addition, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The relevance standard is thus commonly recognized as one that is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue

that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

However broadly defined, relevancy is not without "ultimate and necessary boundaries." *Hickman*, 329 U.S. at 507. Accordingly, district courts have broad discretion to determine relevancy for discovery purposes. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *Vonole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) ("District courts have broad discretion to control the class certification process, and '[w]hether or not discovery will be permitted . . . lies within the sound discretion of the trial court.'") (citing *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 209 (9th Cir. 1975)). District courts also have broad discretion to limit discovery. For example, a court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C)(I).

Generally at the pre-class certification stage, discovery in a putative class action is limited to certification issues such as the number of class members, the existence of common questions, typicality of claims, and the representative's ability to represent the class. *Oppenheimer Fund*, 437 U.S. at 359. Although discovery on the merits is usually deferred until it is certain that the case will proceed as a class action, the merits/certification distinction is not always clear. Facts that are relevant to the class determination frequently will overlap with those relevant to the merits of the case. *See Wal-Mart Stores Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541, 2551-52 (2011) (explaining that often the "rigorous analysis" under Rule 23(a) "will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped.").

**B.**    **Plaintiff's Motion to Compel**

Plaintiff seeks a court order compelling Comcast to produce (1) its outbound dial list of calls made to consumers using an ATDS (ECF No. 29 at 5:23-8:2), and (2) documentary evidence of prior express consent. (*Id.* at 8:4-10:25.)

### 1. Outbound Dial List

Plaintiff's Request for Production No. 7[1] to Comcast states:

> Produce any and all DOCUMENTS relating to or regarding, and including, any and all reports for each outbound dial list to persons that YOU called on behalf of YOURSELF, and/or any third party, including those outbound dial lists, in electronically searchable format (CSV for comma delimited format), generated by any autodialer campaign in which YOU or YOUR agents engaged since four years prior the filing of this action to the date of responding to these document requests.

(ECF No. 29-1 at 13:8-14.)

Plaintiff claims Comcast's outbound dial list is discoverable in that it is relevant to Federal Rule of Civil Procedure 23(a) class certification requirements of numerosity and commonality. (ECF No. 29 at 6:6-7:19.) Plaintiff also maintains the outbound dial list is relevant to the issue of manageability under Rule 23(b)(3). (*Id.* at 7:20-28.)

Comcast contends Plaintiff's request for the outbound dial list is overbroad in light of Comcast's 22 million subscribers and because the request fails to distinguish between different categories of calls, *i.e.*, collection calls versus marketing calls. (*Id.* at 16:10-17:6.) Comcast also contends the request is not limited to calls made from any particular type of dialing equipment or calls placed from the particular geographic division as the calls placed to Plaintiff. (*Id.* at 17:7-14.)

      a.    Numerosity

Plaintiff contends "[t]he outbound dial list during the class period is relevant to the numerosity prerequisite because it will allow Plaintiff to explain to the Court approximately how many cellular telephone numbers were called during the class period, which information can be used to reasonably determine whether there are enough class members that resolving the claims outside the class action mechanism of recovery would be impracticable." (*Id.* at 6:6-12.) In support of its contention, Plaintiff relies on *Stemple v. QC Holdings, Inc.*, 2013 U.S. Dist. LEXIS 99582, at *6 (S.D. Cal. June 17, 2013). (ECF No. 29 at 6:13-16.)

---

[1] Plaintiff's Request for Production Nos. 8-10 contain similar language regarding production of Comcast's outbound dial list. (ECF No. 29-1 at 13:15-14:12.)

The Court agrees with Plaintiff that Comcast's outbound dial list is reasonably calculated to determine the number of calls Comcast made to cell phones during the class period. Thus, the outbound dial list is relevant to numerosity. However, the Court concludes that Plaintiff has less intrusive and burdensome means available to him to obtain evidence which could be used to satisfy the Rule 23(a)(1) numerosity prerequisite. Indeed, carefully-drafted interrogatories or requests for admission, or Comcast's Rule 30(b)(6) deposition, can be utilized to obtain the relevant data to determine an approximate number of calls made to cell phones using an autodialer during the proposed class period.

One of Plaintiff's alternative proposals supports the Court's conclusion. In lieu of production of the outbound dial list, Plaintiff proposes that "Defendant's technology consultant . . . scrub the outbound dial list for cellular telephone numbers only and then inform Plaintiff's counsel of the total number of unique cell phones called during the class period and call frequency. This would obviate the need for actual production of the outbound dial list for pre-certification purposes." (*Id.* at 5:12-17.) Thus, Plaintiff concedes that production of the list is not necessary if Plaintiff were provided the total number of cell phones called and the call frequency. Such information is obtainable via much less burdensome discovery methods.

Comcast argues "[t]he breadth of [Plaintiff's request] is staggering." (*Id.* at 16:11.) While Comcast would have strengthened its position by articulating with specificity the burden it would face in producing its outbound dial list, the Court finds that production of the outbound dial list would impose an undue burden on Comcast in light of the other available means of obtaining the relevant information. As Plaintiff recognizes, "[t]he court is able to make common-sense assumptions in determining numerosity." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 644 (N.D. Ill. 2002). Similarly, the Court here makes the common-sense assumption that given Comcast's 22 million subscribers, production of Comcast's call list over a four-year period will entail significant time and expense. In light of the actual information Plaintiff seeks to obtain, *i.e.*, number of cell

phones called and call frequency, and the availability of other, less burdensome methods of discovering this information, the Court finds that requiring Comcast to expend the time and resources to produce the outbound dial list is not warranted.

The Court also concludes the request is also overbroad and unreasonably burdensome given the uncertain nature of Plaintiff's class allegations. As stated above, Plaintiff's operative Complaint seeks to certify a class of "all persons within the United States who received any unsolicited *marketing* and artificial or prerecorded voice messages from Defendant without prior express consent which message by Defendant or its agents was not made for emergency purposes, within the four years prior to the filing of this action." (ECF No. 1 at 6:4-8 (emphasis added).) Comcast contends that *marketing* calls are not applicable in this case because Plaintiff did not receive marketing calls. Rather, Plaintiff received collection calls made to a phone number that had previously been assigned to a Comcast subscriber, but was later assigned to Plaintiff, a non-subscriber. Thus, according to Comcast, this case involves a "recycled" phone number. (ECF No. 29 at 15:2-5; ECF No. 29-2 at 2:13-3:2.) Although this distinction goes to the merits of Plaintiff's allegations and will be decided at the proper time in this case, it is important for discovery purposes because the scope of Plaintiff's proposed class is not entirely clear. On one hand, the Court is bound by the class definition provided in the Complaint. *See Ortiz v. McNeil-PPC, Inc.*, 2009 U.S. Dist. LEXIS 39584, at *2 (S.D. Cal. May 8, 2009). On the other hand, the "recycled" phone number facts presented by Comcast, which are not disputed by Plaintiff, do not justify imposing a significant burden on Comcast to produce an outbound dial list of *marketing* calls when it appears this case involves *collection* calls.[2]

Accordingly, although the outbound dial list is relevant to the issue of numerosity, under the circumstances of this case it is appropriate to **DENY** Plaintiff's request for the list because "the discovery sought . . . can be obtained from some other source that is

---

[2] Plaintiff's counsel even acknowledged during the March 14, 2014 Discovery Conference that this case involves debt collection calls rather than marketing calls.

more convenient, less burdensome, or less expensive" and Plaintiff "has had ample opportunity to obtain the information by discovery in this action." FED. R. CIV. P. 26(b)(2)(C)(I)-(ii).

b.  Commonality

Plaintiff also contends Comcast's outbound dial list is relevant to Rule 23(a)(2)'s commonality prerequisite. (ECF No. 29 at 6:18-7:18.)

"Class certification requires a plaintiff to show 'there are questions of law or fact common to the class.'" *Knutson v. Schwan's Home Serv., Inc.*, 2013 U.S. Dist. LEXIS 98735, at *20 (S.D. Cal. July 15, 2013) (citing FED. R. CIV. P. 23(a)(2)). "To satisfy commonality, a plaintiff must actively show the putative class 'suffered the same injury . . . such that the . . . class claims will share common questions of law or fact' with those of the named plaintiffs." *Id.* (citing *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 (1982)). "Merely stating questions common to all putative class members is insufficient, however, because '[a]ny competently crafted class complaint literally raises common 'questions.'" *Id.* at *20-21 (quoting *Wal-Mart*, 131 S. Ct. at 2551). "As a result, the test of commonality is not whether common questions exist, but whether common answers to critical questions of law and fact can be reached without impediment." *Id.* at *21 (citing *Wal-Mart*, 131 S. Ct. at 2551). "Since the plaintiff carries the burden of demonstrating commonality, such proof may overlap with findings of merit of the plaintiff's claim." *Id.* at *21 (citing *Wal-Mart*, 131 S. Ct. at 2551-52).

In *Knutson*, Judge Curiel stated:

> The common question is thus, "were we all called on our cellular telephones, by an autodialer or artificial or prerecorded voice, on behalf of [defendant], without having given express consent?" A list of numbers dialed by an autodialer on behalf of [defendant] for a singular purpose could be relevant to this inquiry, especially since Plaintiffs claim the cell phone numbers can be reliably identified within the list and used in conjunction with evidence of lack of consent.

2013 U.S. Dist. LEXIS 98735, at *22.

On remand in *Knutson*, the undersigned concluded that a truncated dial list was indeed relevant to the question of commonality because it would show, after being

analyzed by the plaintiffs' consultants, whether the calls made by the defendant were made to the putative class members' cellular telephones. *Knutson v. Schwan's Home Service, Inc.*, 2013 U.S. Dist. LEXIS 103094, at *4 (S.D. Cal. July 23, 2013).

Similarly, here, Comcast's outbound dial list is relevant to the issue of whether the putative class members were called on their cellular phones by an ATDS. However, as with the issue of numerosity, the Court concludes, in its discretion, that production of the outbound dial list is unwarranted because "the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive" and Plaintiff "has had ample opportunity to obtain the information by discovery in this action." FED. R. CIV. P. 26(b)(2)(C)(I)-(ii). Specifically, Plaintiff is able to utilize less burdensome methods of discovery to determine whether Comcast made calls to cell phones using an ATDS without having prior express consent. Accordingly, although the outbound dial list is relevant to the issue of commonality, under the circumstances of this case it is appropriate to **DENY** Plaintiff's request for the list.[3]

**2.    Prior Express Consent Documentation**

Plaintiff's Request for Production No. 12 states:

> Produce the DOCUMENTS that YOU used to determine whether the cellular telephone numbers to be called by YOU had provided their "prior express consent", as that term is used in 47 U.S.C. Section 227(b)[1](A), prior to making any attempt to call those numbers, including but not limited to any electronic notations in the outbound dial list that the called party provided "prior express consent," and including all DOCUMENTS that YOU may rely on at trial or other hearing in this case to establish "prior express consent" was provided to YOU since four years prior to the filing of this action to the date of responding to these document requests.

(ECF No. 29-1 at 14:20-28.)

Plaintiff seeks to compel Comcast to produce all documentary evidence of prior express consent, which Plaintiff characterizes as an affirmative defense rather than an element of his TCPA claim. (ECF No. 29 at 8:15-9:16.) Alternatively, Plaintiff seeks,

---

[3] In light of the Court's ruling that Comcast need not produce its outbound dial list, the Court does not address the parties conflicting arguments regarding the application of the Cable Communications Act of 1984, 47 U.S.C. § 521 *et seq.*

at a minimum, "the blank customer contracts and other blank forms used by Defendant to purportedly obtain prior express consent." (*Id.* at 9:17-18.) Plaintiff claims "[t]hese blank contracts/forms will assist Plaintiff in demonstrating whether the language on the forms are sufficient to obtain prior express consent for Defendant to make automated and or prerecorded calls to the putative class members." (*Id.* at 9:20-24.) Absent this documentation, Plaintiff claims he will be prejudiced if Comcast later uses unproduced consent documents in opposing Plaintiff's anticipated motion for class certification. (*Id.* at 10:2-19.)

In opposition to Plaintiff's request, Comcast argues that because Plaintiff "has never been a Comcast subscriber [he] lacks standing to challenge the efficacy" of Comcast's subscriber agreements. (*Id.* at 13:23-24.) Comcast also contends that it is Plaintiff that must prove lack of consent as an element of his TCPA claim. (*Id.* at 20:5-14.) Comcast also argues disclosure of its subscriber's consent documentation raises privacy concerns. (*Id.* at 20:16-21:6.) Finally, Comcast's counsel represented during the March 14, 2014 Discovery Conference that Comcast has already produced a screenshot showing that the prior subscriber had provided the phone number at issue as well as copies of its Agreement for Residential Services and its Customer Privacy Notice (*see id.* at 19:5-8), and that Comcast does not expect to rely on any other documents on the issue of prior express consent.

Upon consideration of this issue, the Court concludes that Comcast has satisfied its discovery obligation. Plaintiff agrees with Comcast that he was not a Comcast subscriber at the time he received the phone calls at issue. (ECF No. 1 at 5:4-6.) Moreover, Comcast has produced its Agreement for Residential Services and its Customer Privacy Notice. At this stage of the case it is premature to order Comcast to provide any more specific express consent documents, particularly in light of the fact that Plaintiff, at this juncture, has failed to clearly define the putative class definition. As discussed above, the Complaint alleges a class definition involving marketing calls; however, in the recently filed Joint Status Report (ECF No. 37), Plaintiff's class

1 definition emphasis has morphed into an emphasis on debt collection calls. Because the
2 class definition appears to be a moving target, it is inappropriate to require Comcast to
3 provide additional express consent documentation until after Plaintiff has clearly defined
4 his class definition in his formally filed class certification motion. In this regard, any
5 surprise Plaintiff may experience when Comcast opposes class certification is a result of
6 Plaintiff's own decisions which have left the class definition in flux.

7 Accordingly, Plaintiff's motion to compel Comcast to produce further documents
8 regarding prior express consent is **DENIED**. In light of this ruling, the Court need not
9 address at this stage the parties' conflicting positions on whether prior express consent
10 is an affirmative defense to be established by Comcast or an element of Plaintiff's TCPA
11 claim on which Plaintiff bears the burden of proof.

### C.     Comcast's Motion to Compel

Comcast seeks an order compelling Plaintiff to produce his retainer and fee agreements with counsel in this case and in any other TCPA class actions initiated by Plaintiff. (ECF No. 29 at 22:1-25.)[4]

Defendant served the following document request on Plaintiff: "All DOCUMENTS CONCERNING any agreement with, or the terms pursuant to which [Plaintiff] retained, any attorney to represent [Plaintiff] in this action, including engagement letters or retention agreements between [Plaintiff] and any attorney CONCERNING this action." (ECF No. 29-2 at 5:24-26, 31:3-6.) Defendant served a separate request seeking the same type of documents with respect to any other putative class action initiated by Plaintiff. (*Id.* at 5:24-26, 31:14-18.)

Defendant claims the responsive documents are not privileged and that, "in putative class actions, retainer and fee agreements are relevant to 'the ability of named

---

[4] Comcast's portion of the parties' joint motion also addressed Comcast's request for Plaintiff's cell phone records. (ECF No. 29 at 21:8-27.) However, on March 13, 2014, Comcast filed a status report indicating that this issue has been "resolved and Comcast withdraws its request that the Court compel Plaintiff to produce his cell phone records." (ECF No. 31 at 2:13-14.) Counsel for both parties confirmed during the March 14, 2014 Discovery Conference that this issue has been resolved.

plaintiffs to protect the interest of potential class members and hence are a proper subject for discovery.'" (ECF No. 29 at 22:8-17 (quoting *Epstein v. Am. Reserve Corp.*, 1985 U.S. Dist. LEXIS 15842, at *3 (N.D. Ill. Sept. 18, 1985)).)

Plaintiff objected to both requests on grounds that they are (1) not relevant or reasonably calculated to lead to the discovery of admissible evidence; (2) overbroad as to scope and time and, therefore, unduly burdensome; (3) vague and ambiguous; and (4) seeking documents in violation of the attorney-client privilege. (*Id.* at 31:8-12, 21-24.)

"The Ninth Circuit has repeatedly held retainer agreements are not protected by the attorney-client privilege or work product doctrine." *Hoot Winc, LLC v. RSM McGladrey Fin. Process Outsourcing, LLC*, 2009 U.S. Dist. LEXIS 103045, at *5 (S.D. Cal. Nov. 4, 2009) (citing *Ralls v. United States*, 52 F.3d 223, 225 (1995); *United States v. Blackman*, 72 F.3d 1418, 1424 (9th Cir. 1995); *In re Michaelson*, 511 F.2d 882 (9th Cir. 1975)); *see also Carrizosa v. Stassinos*, 2006 U.S. Dist. LEXIS 66358, at *3 (N.D. Cal. Aug. 31, 2006) (stating that under Ninth Circuit law, fee agreements generally fall outside the scope of the attorney-client privilege). "Communications between attorney and client that concern the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege." *Paul v. Winco Holdings, Inc.*, 249 F.R.D. 643, 654 (D. Idaho Feb. 27, 2008) (quoting *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992)). However, "correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the privilege." *Id.*

Here, the Court concludes Plaintiff's retainer and fee agreement with counsel in this case is relevant to the Rule 23(a)(4) analysis of whether Plaintiff is an adequate representative of the class. *See Rolex Emps. Ret. Trust v. Mentor Graphics Corp.*, 136 F.R.D. 658, 666 (D. Or. 1991); *Epstein*, 1985 U.S. Dist. LEXIS 15842, at *7 ("Fee agreements are relevant to the ability of named plaintiffs to protect the interest of

potential class members and hence are a proper subject for discovery." (citing *Klein v. Miller*, 82 F.R.D. 6, 8-9 (N.D. Tex. 1978) ("[I]nquiry into Plaintiffs' . . . fee arrangement is relevant to the question of Plaintiffs' ability to protect the interests of potential class members by adequate funding of this lawsuit, and the question of award of attorneys fees in the settlement of possible judgment of this lawsuit.")).

Moreover, the attorney-client privilege generally does not preclude disclosure of fee agreements. *Epstein*, 1985 U.S. Dist. LEXIS 15842, at *7 ("[F]ee agreements are not ordinarily subject to the attorney-client privilege.") (citing *Klein*, 82 F.R.D. at 8-9)). In resolving the instant dispute, the Court relies on a similar analysis performed by Magistrate Judge Barbara L. Major in *Stanley v. Bayer Healthcare LLC*, 2011 U.S. Dist. LEXIS 132363, at *12-13 (S.D. Cal. Nov. 16, 2011). In that case, Judge Major concluded "it is clear that retainer agreements are not typically protected by attorney-client privilege." *Id.* at *12. However, in light of the plaintiff's claim that the contents of her retainer agreement would reveal privileged communications, Judge Major ordered that an unredacted copy of the agreement be submitted to chambers for *in camera* review. *Id.*

The Court concludes that Plaintiff's retainer and fee agreement with counsel pertaining to the instant lawsuit is relevant to class certification and should be produced to the Court for *in camera* review to determine whether disclosure would reveal privileged communications. However, Comcast has not established the relevancy or need for Plaintiff's retainer and fee agreements pertaining to other TCPA class actions. Accordingly, Comcast's motion to compel production of Plaintiff's retainer and fee agreements is **GRANTED IN PART** and **DENIED IN PART**.

///
///
///
///
///

### III. CONCLUSION[5]

Based on the foregoing, IT IS HEREBY ORDERED:

1. Plaintiff's motion to compel Comcast to produce its outbound dial list and additional documentation regarding prior express consent is **DENIED**.

2. Comcast's motion to compel Plaintiff to produce his retainer and fee agreement pertaining to this case is **GRANTED IN PART**. On or before **April 11, 2014**, Plaintiff shall lodge directly with the chambers of the undersigned Magistrate Judge an unredacted copy of his retainer and fee agreement pertaining to this case.

3. Comcast's motion to compel Plaintiff to produce his retainer and fee agreements pertaining to other TCPA class actions is **DENIED**.

**IT IS SO ORDERED.**

DATED: April 2, 2014

DAVID H. BARTICK
United States Magistrate Judge

---

[5] The Court notes that it received and reviewed a joint statements from the parties, which was emailed to chambers on March 31, 2014, regarding Plaintiff's anticipated request for an extension of the class discovery cutoff and Plaintiff's deadline to file his motion for class certification. Initially, the Court advises that any request for extension must be properly filed via CM/ECF. Moreover, because Plaintiff's anticipated requested appears to be premised on an expectation that additional documents would be forthcoming from Comcast, given the Court's ruling on the instant discovery dispute, the Court does not believe that any extensions of the deadlines are warranted at this time.