1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11

12

13

14

15

16

| | |
|---|---|
| JAMES GUSMAN, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>    vs.<br><br>COMCAST CORPORATION,<br><br>                    Defendant. | CASE NO. 13CV1049-GPC(DHB)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO STAY**<br><br>[Dkt. Nos. 34, 46, 57.] |

17

18

19

20

21

Before the Court is Defendant's motion to stay the case. (Dkt. No. 34.) Plaintiff filed an opposition and Defendant replied. (Dkt. Nos. 45, 48.) The parties also filed Notices of Supplemental Authority concerning recent district court cases addressing issues relevant in this motion. (Dkt. No. 49, 50, 54.) Based on the reasoning below, the Court GRANTS Defendant's motion to stay the case.

22

**Background**

23

24

25

26

27

28

On May 2, 2013, Plaintiff James Gusman filed a putative class action complaint against Defendant Comcast Corporation for violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 277 *et seq.* (Dkt. No. 1.) He alleges that in February 2013, Defendant contacted Plaintiff with an automatic telephone dialing system ("ATDS") using an "artificial or prerecorded voice" in order to discuss Defendant's subscription services with Plaintiff as many as ten times in a day. (Id.,

[13CV1049-GPC(DHB) ]

1  Compl. ¶ 13.)  After answering each call, an artificial or prerecorded voice instructed

2  Plaintiff to hold while he was connected to an available representative.  (Id. ¶ 14.)

3  These call began when Plaintiff obtained the cellular telephone number around

4  February 1, 2013.  (Id. ¶ 16.)  Plaintiff did not provide his cellular telephone number

5  to Defendant and did not provide prior express consent to receive calls or messages.

6  (Id. ¶¶ 17, 24.)  Plaintiff received about three calls from Defendant where Defendant

7  used an "artificial or prerecorded voice" in conjunction with an ATDS.  (Id. ¶ 20.)

8  Plaintiff alleges these telephone communications various provisions under the TCPA.

9  One specific provision relevant to the instant motion is that it is unlawful for any

10  person "to make any call (other than a call made for emergency purposes or made with

11  the *prior express consent* of the *called party*) using any automatic telephone dialing

12  system or an artificial or prerecorded voice" to, among other things, cellular

13  telephones.  47 U.S.C. § 227(b)(1)(A) (emphasis added).

14      Defendant does not dispute that calls were made to Plaintiff; however, it argues

15  that Comcast had the consent of the prior owner of Plaintiff's cellular telephone

16  number.  At the time Comcast called Plaintiff, between March 30 and June 2, 2013,

17  Comcast's records show the number belonged to the account of a subscriber with a past

18  due balance.  The subscriber's telephone number was recycled and reassigned to

19  Plaintiff.  Plaintiff obtained his telephone number on February 1, 2013. Plaintiff

20  testified that he stopped receiving calls from Comcast in the Fall of 2013.  (Dkt. No.

21  48-1, Hawk Decl. ¶ 2.)

22      Defendant  filed a motion to stay the proceedings under the primary jurisdiction

23  doctrine because the Federal Communications Commission, the administrative agency

24  charged by Congress with regulatory authority over the TCPA, is currently considering

25  the specific issues raised in the complaint.  Plaintiff opposes.

26      On January 16, 2014, United Healthcare Services, Inc. ("United Healthcare")

27  filed a petition for expedited declaratory ruling with the FCC.  (Dkt. No. 34-4, D's

28  RJN, Ex. A.)  Petitioner seeks to "clarify the applicability of the . . . [TCPA] and the

1  Commission's TCPA rules to informational, non-telemarketing autodialed and

2  prerecorded calls to wireless numbers for which valid prior express consent has been

3  obtained but which, unbeknownst to the calling party, have subsequently been

4  reassigned from one wireless subscriber to another." (Id. at 7.)  On January 31, 2014,

5  ACA International ("ACA") filed a petition for rulemaking with the FCC. (Id., Ex. B.)

6  In that case, ACA sought several rulings including "clarify that prior express consent

7  attaches to the person incurring a debt, and not the specific telephone number provided

8  by the debtor at the time a debt was incurred . . . ." (Id. at 21-22.)

9       On February 6, 2014, the FCC issued a Public Notice seeking Comment on

10  Petition for Expedited Declaratory Ruling from United Healthcare filed on January 16,

11  2014. (Id., D's RJN, Ex. C.)  The reply Comment Date was on March 24, 2014. (Id.)

12       On February 21, 2014, the FCC issued a Public Notice directing interested

13  persons to file statements opposing or supporting the Petition for Rulemaking by ACA

14  within thirty days. (Id., D's RJN, Ex. D.)

15       On March 25, 2014, an FCC Commissioner Michael O'Reilly, on the Official

16  FCC Blog, noted the 30% increase of TCPA lawsuits over the past year and a backlog

17  of petitions pending at the FCC. (Dkt. No. 48-2, D's RJN, Ex. E.)  Commissioner

18  O'Reilly noted the importance of ruling on these issues "as soon as possible." (Id.)

19  He further wrote, "[t]hrough this process, the FCC has the opportunity to answer

20  important questions and provide much needed guidance on a variety of TCPA issues,

21  including . . .whether there is liability for calls made to reassigned phone numbers . .

22  . ." (Id.)

23                                    **Discussion**

24  **A.    Primary Jurisdiction Doctrine**

25       The primary jurisdiction doctrine "allows courts to stay proceedings or to

26  dismiss a complaint without prejudice pending the resolution of an issue within the

27  special competence of an administrative agency." Clark v. Time Warner Cable, 523

28  F.3d 1110, 1114 (9th Cir. 2008).  The doctrine is a "prudential" one where the court

1    determines that a claim implicates technical and policy questions that should be first

2    addressed in by the relevant agency with regulatory authority over the relevant industry

3    rather than by the courts.  Syntek Semiconductor Co., Ltd. v. Microchip Tech., Inc.,

4    307 F.3d 775, 780 (9th Cir. 2002).

5         Primary jurisdiction does not apply every time a court is presented with an issue

6    conceivably within the agency's expertise but only used if a claim "'requires resolution

7    of an issue of first impression, or of a particularly complicated issue that Congress has

8    committed to a regulatory agency,' . . . and if 'protection of the integrity of a regulatory

9    scheme dictates preliminary resort to the agency which administers the scheme.'"

10   Clark, 523 F.3d at 1114 (citations omitted).  If a district court applies the doctrine of

11   primary jurisdiction, the issue is "referred" to the relevant agency and the court either

12   stays the proceedings or dismisses the case without prejudice so the parties may seek

13   an administrative ruling.  Id. at 1115; see also Syntek, 307 F.3d at 782; Astiana v. Hain

14   Celestial Grp., Inc., 905 F. Supp. 2d 1013, 1015 (N.D. Cal. 2012) (if doctrine applies,

15   court can either stay proceedings or dismiss the case without prejudice).

16        Although there is no fixed formula, the Ninth Circuit has looked to four factors

17   when applying the doctrine: "(1)[a] need to resolve an issue that (2) has been placed

18   by Congress within the jurisdiction of an administrative body having regulatory

19   authority (3) pursuant to a statute that subjects an industry or activity to a

20   comprehensive regulatory authority that (4) requires expertise or uniformity in

21   administration."  Syntek, 307 F.3d at 781.

22        Congress granted the FCC the authority to promulgate regulations to implement

23   the TCPA.  See 47 U.S.C. § 227(b)(2).  The FCC has regulatory authority that subjects

24   the "industry to a comprehensive regulatory scheme that requires expertise or

25   uniformity in administration."  Matlock v. United Healthcare, No. 2:13cv2206-MCE-

26   EFB, 2014 WL 1155541, at *2  (E.D. Cal. Mar. 20, 2014).  It does not appear that

27   Plaintiff disputes the second, third or fourth factors.

28        Plaintiff opposes the stay arguing that the issue is not an issue of first impression

1   and the FCC has already reviewed and decided the issues presented in the petitions by

2   United Healthcare and ACA.  First, it contends that the TCPA's do-not-call provisions

3   apply to specific telephone numbers rather than an individual's name associated with

4   a telephone number.  Second, the FCC has shown signs of narrowing the scope of

5   "prior express consent", not broadening it as Defendant seeks to do.  See In the Matter

6   of Rules and Regulations Implementing the Telephone Consumer Protection Act of

7   1992, 27 F.C.C.R. 1830, 1831 at 2 (2012) (revised TCPA" rule to require prior express

8   *written* consent for all autodialed or prerecorded telemarketing calls to wireless

9   numbers.") Plaintiff alleges that the Ninth Circuit has already held that express consent

10  is consent that is "clearly and unmistakably stated."  Satterfield v. Simon & Schuster,

11  Inc., 569 F.3d 946, 955 (9th Cir. 2009).

12          Defendant contends that the FCC has not addressed the narrow issues in this

13  case.  The Court agrees with Defendant.  In this case, Comcast placed collection calls

14  to subscribers who consented to receive calls from Comcast to discuss their past due

15  balances.  When Comcast made the calls, it did not know that its subscriber no longer

16  used the telephone number and that the cellular telephone number had been reassigned

17  to Plaintiff.

18          Courts are divided as to whether a "called party" is the "actual recipient" or the

19  "intended recipient."  Compare Cellco Partnership v. Wilcrest Health Care Mgmt. Inc.,

20  No. 09-3534(MLC), 2012 WL 1638056, at *7 (D.N.J. May 8, 2012) ("called party" is

21  the "intended recipient") with Olney v. Progressive Cas. Inc. Co., –F. Supp. 2d –, 2014

22  WL 294498, at *3 (S.D. Cal. Jan. 24, 2014) ("called party" is not limited to "intended

23  recipient" and citing cases in support).  The FCC has not defined "called party" for

24  purposes of giving consent and courts have not uniformly decided the issue.

25          The FCC has also not ruled on "prior express consent" in the context of recycled

26  or reassigned cellular telephone numbers.  The issue of liability under the TCPA for

27  calls made to reassigned telephone numbers where the caller had the consent of the

28  prior owner of telephone number is an issue of first impression and within the expertise

1    of the FCC.

2         There are currently two pending proceedings before the FCC ready to be ruled

3    on.  These proceedings address whether there is liability under the TCPA for calls

4    placed to a telephone number where consent had been previously given but the

5    telephone number has been reassigned to someone who has not given consent.  The

6    public comment period has passed on both petitions.  As to the rulemaking petition, the

7    FCC must now either dispose of the petition, issue a notice of inquiry or a notice of

8    proposed rulemaking. (Dkt. No. 45-2, Kazerounian Decl., Ex. A.) Moreover, in March

9    2014, an FCC Commissioner noted that this issue is one that needs to be resolved by

10   the FCC in a timely manner.  (See Dkt. No. 48-2, D's RJN, Ex. E.)

11        Recently, district courts have stayed cases concerning this particular issue of

12   whether liability attaches for calls placed to reassigned telephone numbers based on

13   these petitions before the FCC.  Fontes v. Time Warner Cable Inc., No. 2:14cv2060-

14   CAS(CWx), Dkt. No. 23 (C.D. Cal. May 19, 2014) (declining to address whether action

15   should be stayed under the primary jurisdiction doctrine but staying action on its own

16   motion for 120 days pursuant to its inherent power to control its docket); Barrera v.

17   Comcast Holdings Corp., Case No. 14cv00343-THE, 2014 WL 1942829 (N.D. Cal.

18   May 12, 2014); Matlock v. United Healthcare, No. 2:13cv2206-MCE-EFB, 2014 WL

19   1155541, at *1  (E.D. Cal. Mar. 20, 2014); Henrichs v. Wells Fargo Bank, NA, No.

20   3:13cv5434-WHA, Dkt. No. 56 at 2-3 (N.D. Cal. Apr. 15, 2014).

21        In a notice of supplemental authority, Plaintiff cites to Meyer v. Receivables

22   Performance Mgmt., LLC, No. C12-2013RAJ, 2014 WL 1744284, at *1-2 (W.D.

23   Wash. Apr. 30, 2014), where a district court denied a motion to stay despite a pending

24   rulemaking petition and four declaratory relief petitions.  However, that case is

25   distinguishable. First, Meyer did not address liability for calls placed to reassigned or

26   recycled cellular telephone numbers where the consent was granted by the previous

27   telephone call owner but concerned which devices or technologies are autodialers

28   within the meaning of the TCPA.  Moreover, the court expressed concern that any

1  rulings from the FCC is discretionary and stated that the court "will not stay this case

2  while it awaits rulings that may never come." Id. at *2.  However, in the instant case,

3  the public comment periods have passed and unlike Meyer, there is an indication by an

4  FCC Commissioner that this is an issue of importance where guidance is needed and

5  that the FCC should work on resolving this issue without delay.  (See Dkt. No. 48-2,

6  D's RJN, Ex. E.)

7          Plaintiff also contends that he will be prejudiced due to passage of time as any

8  FCC rulings regarding the TCPA are applied prospectively, not retroactively.

9  Defendant disagrees.

10         Administrative rules will not have retroactive effect unless Congress authorized

11  the administrative agency and the language of the regulations require it.  Bowen v.

12  Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988).  However, a clarification of a

13  regulation does not raise issues about retroactivity. Clay v. Johnson, 264 F.3d 744, 749

14  (7th Cir. 2001) (stating that a clarifying rule "can be applied to the case at hand just as

15  a judicial determination construing a statute can be applied to the case at hand," and

16  does not raise issues of retroactivity).

17         Here, both petitions seek to "clarify" the regulations.  In United Healthcare,

18  Petitioner seeks to "*clarify* the applicability of the . . . [TCPA] and the Commission's

19  TCPA rules to informational, non-telemarketing autodialed and prerecorded calls to

20  wireless numbers for which valid prior express consent has been obtained but which,

21  unbeknownst to the calling party, have subsequently been reassigned from one wireless

22  subscriber to another."  (Dkt. No. 34-4, D's RJN, Ex. A at 7) (emphasis added.)  ACA

23  also sought to "*clarify* that prior express consent attaches to the person incurring a debt,

24  and not the specific telephone number provided by the debtor at the time a debt was

25  incurred . . . ."  (Id. at 21-22) (emphasis added).  Therefore, any clarifications made by

26  the FCC may be applied retroactively.  Moreover, Plaintiff will not be prejudiced since

27  he stopped receiving calls in the Fall of 2013 and the case is in the early stages of

28  litigation.  Accordingly, Plaintiff's argument is without merit.

1    Based on the <u>Syntek</u> factors, the Court concludes that a stay is warranted under
2 the primary jurisdiction doctrine.

3 **B.     Requests for Judicial Notice**

4    Defendant filed requests for judicial notice as to documents posted on the official
5 websites of the FCC. (Dkt. No. 34-4, D's RJN; Dkt. No. 48-2.)   The Court may take
6 judicial notice of information made "publicly available by government entities" and
7 whose authenticity no party disputes, such as declaratory ruling petitions filed with the
8 FCC, and subsequent filings by the FCC and other parties on the same docket.
9 <u>Daniels-Hall v. Nat'l Educ. Ass'n</u>, 629 F.3d 992, 998-99 (9th Cir. 2010).   Here,
10 Defendant seeks the Court to take judicial notice of materials posted on the FCC
11 website.  Plaintiff has also not opposed the requests for judicial notice.  Accordingly,
12 the Court GRANTS Defendant's requests for judicial notice.

13                                   **Conclusion**

14    Based on the above, the Court GRANTS Defendant's motion for a stay.  The
15 parties shall submit a joint status report regarding the status of the FCC petitions every
16 120 days until the stay in this case is lifted.  The hearing set for May 23, 2014 shall be
17 **vacated.**

18    The Court also DENIES without prejudice Plaintiff's pending motion to certify
19 class, (Dkt. No. 57), and motion to file documents under seal, (Dkt. No. 46), currently
20 set for hearing on July 25, 2014 subject to renewal once the stay is lifted.

21    IT IS SO ORDERED.

22

23 DATED:  May 21, 2014

24
                                         HON. GONZALO P. CURIEL
25                                       United States District Judge

26

27

28

- 8 -                                    [13CV1049-GPC(DHB) ]